Margaret THORNBERRY, Patricia Farmer, Delores O'Sullivan, and Linda Magel, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees/Cross-Appellants,

v.

DELTA AIR LINES, INC., a corporation, Defendant-Appellant/Cross-Appellee.

Nos. 81–4182, 81–4197.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1982.

Decided May 5, 1982.

As Corrected May 13, 1982.

As Modified June 4, 1982.

Rehearing and Rehearing En Banc Denied June 17, 1982.

As Amended July 14, 1982.

Elizabeth G. Leavy, San Francisco, Cal., argued, for Thornberry; Gerald E. Magaro, Carroll, Burdick & McDonough, San Francisco, Cal., on brief.

Gilmore F. Diekmann, Jr., Bronson, Bronson & McKinnon, San Francisco, Cal., for Delta Air Lines.

Before FARRIS, FERGUSON and NELSON, Circuit Judges.

FERGUSON, Circuit Judge:

Several appeals and cross-appeals are involved in this case. All of the appeals and cross-appeals, however, are directed to the appropriateness of the amount of attorneys' fees awarded to attorneys representing a class of female employees in a Title VII suit against Delta Air Lines.

The suit resulted in a settlement with Delta which provided for a claims procedure to provide Delta employees with open-ended relief from sex discrimination, a complaint process within Delta's employment structure to deal with any sex discrimination complaints which might arise in the future, changes in job description and promotional opportunities for women, and an explicit·

monetary settlement for the four named plaintiffs. The agreement also provided for payment to attorneys for the handling of claims pursuant to the claims procedure. With respect to the issue of plaintiffs' attorneys' fees and costs during litigation, the agreement provides as follows:

After final approval of this agreement, the parties shall negotiate concerning the amount of the costs, including attorneys' fees, to be awarded, subject to court approval. Should the parties fail to agree on this issue within thirty-five (35) days of final approval of the Settlement Agreement, and no appeal having been taken from the approval order, plaintiffs may file a motion according to the court's regular calendar procedures seeking an award of costs, including reasonable attorneys' fees.

After the parties failed to reach agreement concerning the amount of plaintiffs' attorneys' fees and costs within the stipulated 35-day period, plaintiffs applied to the court for an appropriate award. The total amount of fees sought by plaintiffs was $409,846.88. In addition, plaintiffs sought reimbursement for costs incurred by them in the litigation in the amount of $90,571.92. The court entered judgment on December 5, 1980 in favor of plaintiffs in the amount of $224,334.88 for attorneys' fees and $83,918.51 for costs incurred in the prosecution of the action.

Delta filed this appeal from that judgment. Plaintiffs cross-appealed from the portion of the court's subsequent orders of December 5, 1980 denying $6,653.41 in travel expenses, and March 31, 1981 granting them only $2,700.00 in additional fees.

■ The trial court has broad discretion to determine reasonable attorneys' fees and costs. Such a decision is not to be disturbed except for abuse of discretion. Under this narrow standard of review, we reject both the appeal and the cross-appeal, and affirm the judgment and subsequent orders of the district court.

The only real issue in this case is whether the district court abused its discretion in awarding the stated amount to the plaintiffs.

Title VII confers statutory authority on the court to award attorneys' fees. Section 706(k), 42 U.S.C. § 2000e–5(k). The trial court's broad discretion to determine reasonable attorneys' fees has been well recognized by the circuits. *Sangster v. United Air Lines, Inc.*, 633 F.2d 864 (9th Cir. 1980); *In re Gypsum Antitrust Cases*, 565 F.2d 1123 (9th Cir. 1977); *Schaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002 (9th Cir. 1972). In *Schaeffer v. San Diego Yellow Cabs*, the Ninth Circuit emphasized that the allowance of reasonable fees in Title VII cases is an important feature of the enforcement provisions of the act. The Supreme Court in *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), stated that the amount of the award should not be so low that the award would discourage others seeking to attack discriminatory practices. The trial court must consider the congressional objective of giving victims of discrimination access to the courts when determining an appropriate fee award.

Due to the trial judge's familiarity with the litigation, review of the trial court's exercise of discretion in awarding attorneys' fees is narrow. The District of Columbia Court of Appeals, en banc, stated:

It is common learning that an attorney's fee award by the District Court will be upset on appeal only if it represents an abuse of discretion. We customarily defer to the District Court's judgment because an appellate court is not well situated to assess the course of litigation and the quality of counsel. The District Court judge, by contrast, closely monitors the litigation on a day-to-day basis. The Supreme Court long ago observed that a trial judge "has far better means of knowing what is just and reasonable than an appellate court can have." *Trustees v. Greenough*, 105 U.S. 527, 537, 26 L.Ed. 1157 (1882). Accordingly, we think "it is better to have th[e] discretion [to award fees] exercised by the court which has been most intimately connected with the case."

*Copeland v. Marshall,* 641 F.2d 880, 901 (D.C.Cir.1979). Likewise, the Ninth Circuit has held:

> In reviewing the court's exercise of its discretion, we are not to "substitute our ideas of fairness for those of the district judge in the absence of evidence that he acted arbitrarily." *Patterson v. Newspaper & Mail Deliverers' Union,* 514 F.2d 767, 771 (2d Cir. 1975), *cert. denied,* 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976), and such evidence must constitute a "clear showing" of abuse of discretion, *Flinn v. FMC Corp.,* 528 F.2d 1169, 1172 (4th Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976).

*In re Gypsum Antitrust Cases, supra,* 565 F.2d at 1128.

In the instant case, Judge Peckham closely monitored the litigation over a period of approximately five years, and carefully considered the evidence on attorneys' fees.

In determining the amount of fees to be awarded in Title VII litigation, courts have adopted two overlapping frameworks of analysis: the lodestar approach, *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3rd Cir. 1973), and the *Johnson* approach, *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). Both the *Johnson* and the lodestar approach are consistent with the legislative intent of the statutory fee provision of Title VII.

In the instant case, the district court combined the two approaches. First, Judge Peckham weighed a number of the factors listed in *Johnson,* such as the customary fee charged by plaintiffs' attorneys for similar work, the range of fees for similar work performed by attorneys in the geographical area, and the special expertise of plaintiffs' counsel in employment discrimination cases. In so doing, Judge Peckham determined the legitimate hourly rate.

Having determined the base rate, the court then determined the reasonableness of attorney time spent on the case. The court then multiplied the hours claimed by the hourly rates that it had determined to be reasonable for each attorney to arrive at the lodestar figure.

After arriving at the lodestar figure, the court concluded that the results obtained by the plaintiffs' attorneys were significant and therefore there was no need to accept Delta's suggestion that the lodestar figure be adjusted downward by 10% because the attorneys' gains were negligible.

■ Moreover, the court did not err by refusing to limit the percentage amount of the pecuniary award. In *Harkless v. Sweeny Independent School District,* 608 F.2d 594 (5th Cir. 1979), the court stated:

> [T]he statute provides that a "prevailing party" should receive attorney's fees when the trial court deems it appropriate, and does not limit those fees to the amount recovered by the plaintiff. The purpose of the Attorney's Fees Award Act—to encourage private enforcement of the civil rights laws—would be thwarted by a limitation such as that proposed by the appellants, and no such restriction is suggested by the legislative history of the Act.

*Id.* at 598. The Ninth Circuit has agreed with this reasoning. *Manhart v. City of Los Angeles,* 652 F.2d 904 (9th Cir. 1981) (substantial attorney fee award upheld by Ninth Circuit despite absence of any back pay whatsoever).

■ The fact that plaintiffs did not obtain every form of relief sought does not necessarily require a reduction in the amount to be awarded. In *Manhart v. City of Los Angeles,* the Ninth Circuit held that a Title VII fee award cannot be deemed excessive because it included fees for time spent in preparing claims which were dismissed by the district court. The court stated:

> [P]laintiffs pursued several claims to remedy the same injury, gender discrimination. Under those circumstances, plaintiffs are entitled to an award for all time spent in pursuit of their ultimate goal. *Copeland v. Marshall,* 641 F.2d at 892 n.18; *Lamphere v. Brown University,* 610 F.2d 46, 47 (1st Cir. 1979); *see Seattle*

*School District v. Washington*, 633 F.2d 1338, 1349 (9th Cir. 1980).

652 F.2d at 909.

In *Northcross v. Board of Education*, 611 F.2d 624 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980), the trial court's reduction of fees, because plaintiff had not prevailed in some issues, was reversed on appeal:

This approach is not proper under the Fees Award Act. The question as to whether the plaintiffs have prevailed is a preliminary determination, necessary before the statute comes into play at all. Once that issue is determined in the plaintiffs' favor, they are entitled to recover attorneys' fees for "all time reasonably spent on a matter." The fact that some of that time was spent in pursuing issues on research which was ultimately unproductive, rejected by the court, or mooted by intervening events is wholly irrelevant. So long as the party has prevailed on the case as a whole the district courts are to allow compensation for hours expended on unsuccessful research or litigation, unless the positions asserted are frivolous or in bad faith. . . . Congress has mandated that a prevailing party's attorney should be compensated "as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter."

611 F.2d at 636.

■ Moreover, it is perfectly acceptable for the court to compensate the time plaintiffs' attorneys spent in administrative proceedings which were relevant and beneficial in preparing the Title VII claim. Courts frequently allow compensation for work done in such proceedings.

Attorneys' fees are an integral part of the remedies which Congress envisioned to assure the elimination of discrimination and to effectuate civil rights policies . . . . The groundwork of many cases which come to court is laid at the administrative level, and the absence of adequate representation can adversely affect the subsequent court proceedings. Thus, where a civil action is initiated, and plaintiff prevails, the Court has discretion to award attorneys' fees for all work that was undertaken to vindicate a plaintiff's right to be free of discrimination.

*Reyes v. Mathews*, 13 Empl.Prac.Dec. (CCH) ¶ 11,365 (D.D.C.1976).

■ In this case, representation of plaintiffs at the unemployment compensation hearings was critical to the success of their subsequent court proceedings. Both terminations involved elements of alleged reprisal for Title VII-related activities.

■ Judge Peckham also acted within his discretion by awarding out-of-pocket costs and expenses sought by plaintiffs in their application for attorneys' fees. In *Northcross v. Board of Education*, 611 F.2d 624 (6th Cir. 1979), the court stated:

Some expenses are included in the concept of attorney's fees, as "incidental and necessary expenses incurred in furnishing effective and competent representation," and thus are authorized by § 1988 [Attorney's Fees Act]. *See* remarks of Congressman Drinan, 122 Cong.Rec. H12160 (Daily ed. 1 Oct. 1976), *Beazar v. New York City Transit Authority*, 558 F.2d 97 (2d Cir. 1977), *rev'd on other grounds*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). The authority granted in section 1988 to award a "reasonable attorney's fee" included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of § 1988.

611 F.2d at 639.

A similar approach was taken in *Reynolds v. Abbeville County School District*, 17 Empl.Prac.Dec. (CCH) ¶ 3889 (D.S.C.1978). In that case, the court awarded "litigation related expenses," including travel expenses, photocopying, and telephone calls. Perhaps the most important justification for awarding costs like these is that the refusal to compensate such costs would

make it difficult, if not impossible, to effectuate the purpose of Title VII, which has been characterized by the Supreme Court as follows: "To make persons whole for injuries suffered on account of intentional employment discrimination. This is shown by the very fact that Congress took care to arm the courts with *full equitable powers."* *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280, 297 (1975) (emphasis added).

Needless to say, the clearly expressed legislative·intent cannot be effectuated unless the court has the option to allow plaintiffs to recover the full costs of litigation.

Those costs which are not considered a part of attorney's fees, and those not within the ambit of the "liberal construction" rule which governs the application of § 1988, require a different analysis. *See Northcross, supra,* 611 F.2d at 639–40. Unlike attorney's fees, taxation of these costs, which include consulting and expert witness fees, lies within the trial court's discretion. *Id.* at 640. The exercise of that discretion may not be unlimited, however. We note that *Chapman v. Telephone & Telegraph Co.,* 456 F.Supp. 77, 83–84 (N.D.Cal. 1978), contains language suggesting that these elements of cost may only go beyond the statutory "limits" (subsistence and transportation) in the presence of special circumstances. *See* F.R.Civ.P. Rule 54(d); 28 U.S.C. §§ 1821, 1920. *See also Baum v. United States,* 432 F.2d 85 (5th Cir. 1970). It is clear, however, that the required "special circumstances" are largely a matter of the reasonable needs of the party in the context of the litigation. Thus, in determining whether or not special circumstances exist, the judge must look to the practical litigation needs of the party. For instance, in *EEOC v. Datapoint Corp.,* 412 F.Supp. 406, 410 (W.D.Tex.1976), *affirmed in part and remanded in part on other issues,* 570 F.2d 1264 (5th Cir. 1978), the court found "that the testimony and trial preparation incident thereto of each of the aforementioned experts was necessary to defendant's defense and that fees and expenses incurred by *Datapoint* in connection with

the employment of these experts was reasonable." In the instant case, the trial court found that the testimony of the expert computer witnesses was essential both to prove the plaintiff's prima facie case through the use of statistics and to rebut the defendant's "lack of interest" defense. That finding is adequately supported by the record, and satisfies us that the trial court properly considered the relationship between the claimed consulting and expert witness fees and the reasonable needs of the litigation. We therefore hold that the trial court's determination with respect to those fees was within its discretionary authority. Since the trial court's decision can only be overturned for abuse of discretion, *see Northcross, supra,* 611 F.2d at 640, we affirm the award.

In conclusion, there is no evidence to show that Judge Peckham abused his discretion. If anything, the evidence is all on the other side, that the judge made a careful analysis of the appropriate award of attorneys' fees. Judge Peckham's award is upheld.

AFFIRMED.